THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
FRANCISCO LUCIANO PEÑA, Defendant and Appellant.

No. 15245. Argued October 1, 1953.—Decided December 14, 1954.

10. JURY—RIGHT TO TRIAL BY JURY—WAIVER OF RIGHT OR PRIVILEGE TO BE TRIED BY JURY—IN CRIMINAL ACTIONS—IN GENERAL.—Waiver of trial by jury is valid when it is made by counsel and ratified by defendant personally, upon being examined by the trial judge.

*Rafael Atiles Moréu* for appellant. *J. B. Fernández Badillo, Acting Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On May 25, 1950, the Prosecuting Attorney of the District Court of Ponce filed an information charging defendant Francisco Luciano Peña with mayhem, committed as follows: "because the aforesaid defendant Francisco Luciano Peña, sometime in the month of March, 1950, and in the municipality of Ponce, Puerto Rico, which forms part of the Judicial District of Ponce, Puerto Rico, voluntarily, illegally, maliciously and with the intent to inflict on him serious bodily injury, assaulted and battered Bernabé Torres with a machete, causing him an incised wound in the palm of his left hand, as a result of which said Bernabé Torres has become permanently maimed on the aforesaid left hand."

On June 13, 1950, defendant was arraigned and upon appearing at the arraignment, assisted by counsel, he pleaded not guilty and prayed for a trial by jury. On July 6, 1950, the case was tried by a Court without a jury because defendant had waived a trial by jury. After the corresponding hearing, defendant was found guilty of mayhem. On motion of defendant's counsel, the trial judge reserved the pronouncement of judgment, and ordered the probation officer to submit a report on the desirability of suspending whatever sentence might be imposed on defendant. It seems that the probation officer did not submit his report until June 8, 1951.

On August 15, 1951, the trial judge sentenced defendant to serve from one to five years' imprisonment in the penitentiary, thereby, denying the petition for probation. Feeling

aggrieved by said judgment, defendant-appellant appealed and assigns the following errors:

"*First error:* the trial court committed error and a manifest abuse of discretion in refusing to place a minor —he was not yet 17 years old on the day of the trial—on probation, when said minor had already served a year and a half while awaiting trial in the District jail of Ponce, had no criminal record, and the Court took no steps to determine the real age of the minor at the time of the commission of the crime, there being a strong probability that he was not yet 16 years old at the time he committed the offense.

"*Second error:* the trial court committed error and a manifest abuse of discretion in refusing to place defendant on probation, after trial, without pronouncing sentence, inasmuch as one year and a month had elapsed between the time the trial was held and judgment rendered, which exceeds the minimum penalty imposed, which was from one to five years' imprisonment in the penitentiary, the defendant being entitled, under those circumstances, to have the sentence suspended, inasmuch as he had served the minimum sentence while awaiting trial.

"*Third error:* the trial court committed a manifest error of law upon assuming jurisdiction over defendant without it being proved that the latter was 16 years old at the time of the crime.

"*Fourth error:* the trial court committed manifest error in weighing the evidence, in concluding that it was a case of mayhem when the doctor who so certified in court was not such, and when he did not prove that the injured party had been maimed.

"*Fifth error:* the trial court erred in accepting defendant's waiver of trial by jury because he did not waive it intelligently.

"*Sixth error:* the trial court erred in sentencing defendant when he was not duly represented by counsel."

 As to the first error, bearing on the possible abuse of discretion committed by the trial judge in denying probation to a minor 17 years old, although over sixteen, who at the time he was sentenced had already served a year and a half while awaiting trial in the District Jail of Ponce, and had no criminal record, the applicable law is § 2 of Act No. 259 of April 3, 1946 (Sess. Laws, p. 534), as amended by Act No. 177 of May 4, 1949 (Sess. Laws, p. 556), which provides: "The district courts may suspend the effects of a sentence entered in any case of felony which is not murder, robbery, incest, extortion, rape, infamous crime against nature, larceny or burglary and order that the person sentenced be placed on probation whenever at the time of imposing said sentence *all the following requisites* hereinbelow listed *concur:* (1) that said person, prior to the date on which the sentence imposed is proposed to be suspended, has not been convicted, sentenced or confined in prison for any offense prior to the commission of the offense for which he is being prosecuted; (2) that the circumstances in which the offense was committed do not evince in the offender a behavior or character problem for the favorable solution of which, in the interest of the proper protection of the community, the confinement of said person is required in one of the penal institutions of Puerto Rico; (3) that the trial judge has before him *a report made to him by a probation officer* after the latter has made a careful investigation of the family background and history of the person sentenced and that from the contents of said report the trial judge may conclude that no phase of the life of such person evinces the need that he be confined in one of the penal institutions of Puerto Rico to accomplish the reform or rehabilitation contemplated for such person by the law as a measure of adequate protection for the community; *Provided,* that the trial court may, in its discretion, in addition to placing the person sentenced on probation, impose a fine the amount of which shall be in the discretion of the court; *Provided, fur-*

*ther*, that the person placed on probation may be **required**, while on probation, to make up to the party aggrieved the damages caused or to assume the obligation of correcting the evil caused by his offense; *Provided further*, that after being placed on probation the person shall remain under the custody of the court and subject to the supervision of the Conditional Release Board until the expiration of the maximum term of his sentence."

· We agree with defendant-appellant's counsel that his lack of penal antecedents is a favorable circumstance for the suspension of sentence. But we likewise agree with the *Fiscal* of this Court in that the absence of penal antecedents, alone, is not sufficient for an accused to obtain probation. *People v. Feliciano*, 67 P.R.R. 227, 229 (Travieso) (1947). As to the fact that said defendant had served a year and a half while awaiting trial in the District Jail of Ponce, it is convenient to bear in mind that defendant, besides, had been sentenced to serve six months in jail for carrying a weapon, with which he committed the mayhem charged, and that there is no suspension of sentence for said crime.

██ It was the duty of the trial judge to impose an indeterminate sentence on defendant, according to § § 1 and 2 of Act No. 295 of April 10, 1946, as amended by Act No. 176 of May 4, 1949 (Sess. Laws p. 552) irrespective of the fact that he had considered the possibility of giving defendant the benefit of probation. *People v. Rodríguez*, 69 P.R.R. 507, 512 (Todd, Jr.) (1949). As a matter of law, the trial court must mandatorily impose an indeterminate sentence in felony cases not entailing life imprisonment. Indeterminate sentence is mandatory, and suspended sentence optional, when the circumstances so warrant it. The error assigned was not committed.

██ As to the second error, with respect to the possible abuse of discretion of the trial judge in refusing to place defendant on probation after more than a year had elapsed

since the trial, without judgment having been pronounced, the statute in point is §§ 309, 318 and 319 of the Code of Criminal Procedure of Puerto Rico, which provide:

"Section 309.—(1191 Cal.) (Amended pursuant to the Act of March 12, 1908, p. 54). After a plea or verdict of guilty, or after a verdict against the defendant on the plea of the former conviction or acquittal, if the judgment be not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which, in cases of felony, must be at least two days after the verdict, if the court intend to remain in session so long; but if not, *then at as remote a time as can reasonably be allowed.*"

"Section 318.—When the defendant appears for judgment he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him, and of his plea, and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him.

"Section 319.—If no sufficient cause is alleged or appears to the court why judgment should not be pronounced, *it must thereupon be rendered.*"

Reading these three sections together, they show that here in Puerto Rico our Code of Criminal Procedure does not fix a time for pronouncing judgment in cases of felony, and that said judgments can be rendered "at as remote a time as can reasonably be allowed," according to the circumstances of each case. The very prohibition to pronounce judgment in felony cases until at least two days after the verdict, convinces us that the lawmaker realized the importance of granting the trial judge a reasonable period of time for imposing a scientific and fair sentence.

When our criminal system had not yet considered granting occasional offenders the benefits of the indeterminate sentence and of probation, there already existed in § 320 of the Code of Criminal Procedure of Puerto Rico a procedure whereby the trial judge could hold an additional hearing, to hear the parties summarily as to the aggravating or

mitigating circumstances which should be considered upon imposing sentence on the accused. If this was so at a time when the imposition of a sentence was almost exclusively a judicial responsibility, we can not presume that there is less flexibility in those cases where, the defendant having requested probation, the trial judge must first receive the report of a probation officer with respect to the possible adaptability of the accused to the social rehabilitation which inspires the new system.

Viewing the problem from this angle, we see that the reasonable term to which our former jurisprudence refers must be determined in the light of the new factor of suspension of sentence, if the accused moves for the benefit of probation. Since this is a special case, the term of one year and one month is not unusual if we bear in mind that it was during the time that our probation system was still at an experimental stage, which always implies an adjustment of rules and the training of the corresponding personnel.

▉▉▉ As to the third error, with respect to the jurisdiction assumed by the trial court over the person of the defendant without it having been determined that he was 16 years old, the statute in point is Act No. 37 of March 11, 1915, as amended by Act No. 10 of April 6, 1916 and by Act No. 62 of July 18, 1925. Section 19 of Act No. 37 of March 11, 1915 (Sess. Laws p. 71) still in its original version provides that: "If the age of any child appearing before the court should be brought into question, the court shall be final judge" (referring to the Judge of the Minors' Guardianship Court) "as to whether it has jurisdiction of the case; and for the purpose of passing judgment on the age of such child, the court may request a certified copy of the birth record thereof, and may summon as a witness any physician employed by The People of Puerto Rico in the Sanitation Service or in any of the insular penal institu-

tions . . . Whenever an officer or any other person arresting a child shall be in doubt as to the age of the said child, he shall proceed with the child according to the provisions of this Act, in the same manner as if the child was unquestionably under the age of sixteen years."

There is no doubt that the intention of Act No. 37 of March 11, 1915, is that any question as to the age of a delinquent child be decided at the first instance by the Minors' Guardianship Court (Juvenile Court) and not by the ordinary courts which take cognizance of criminal causes. The Act imposes said obligation on the officer *or any other person arresting a child.* According to the law in force in Puerto Rico when Act No. 37 of March 11, 1915, was approved, the prosecuting attorneys were among the persons entitled to arrest a delinquent. Therefore, if in the course of their investigation, the prosecuting attorneys of Puerto Rico meet a doubtful case, where the delinquent child's age is in question, their obligation is to submit it to the Guardianship Court and not to the ordinary courts.

This is a case where neither the peace officer who made the arrest nor the prosecuting attorney who ordered it, realized the possible adolescence of the delinquent, and therefore, instead of referring the case to the Minors' Guardianship Court, an information was filed against the minor as if he were an adult. Unquestionably, in a case like this the judge who presided over the criminal section of the ordinary court had power to suspend the criminal action and remand the cause to the Minors' Guardianship Court to continue with the prosecution. His failure to do so is better understood by inspecting the transcript of the evidence. The only two instances when anything in the way of a controversy as to the real age of the accused was raised, were the following:

*Lic. Noriega:* "Give your name."
*Defendant:* "Francisco Luciano Peña."
*Lic. Noriega:* "How old are you?"
*Defendant:* "17 years old."

*Lic. Noriega:* "Have you reached the age of 17 or not?"
*Defendant:* "Well, more or less."
*Lic. Noriega:* "You are not 17 years old yet?"
*Defendant:* "No sir."
(Transcript of Evidence, p. 26).

*Lic. Noriega:* "Your Honor, with regard to the offense of mayhem, of which your Honor has just found defendant guilty, we waive the term to render judgment and we pray that this case be submitted to the probation officer, so that he may order, we mean, consider, whether this young fellow may avail himself of the benefits of Act No. 259, as amended, and we wish to inform the court that he has never before been convicted of any offense, that he has never been confined in the penitentiary or in jail; *he will be 17 years old this month,* he has never been to prison."

(Transcript of evidence, pp. 30, 31). As may be seen, defendant's own testimony establishes that he is over sixteen but under seventeen years old, and it is defendant's own counsel who informs the Court that in the same month of the hearing, that is, in July 1950, defendant would be 17 years old. Having committed the offense in March, 1950, that is, four months before, it is clearly established by defendant's own evidence that the former District Court of Ponce had jurisdiction of the person of the defendant.

■ As to the fourth error, with respect to the conclusion that the hand was maimed, based on the testimony of a physician who was not authorized to testify as an expert, the evidence discloses the following:

*District Attorney Morales:* "What is your name?"
*Witness:* "Fidel Alonso Caíñas."
*District Attorney Morales:* "Profession?"
*Witness:* "Physician-Surgeon."
*Mr. Noriega:* "We accept the capacity of the expert."

(Transcript of evidence, p. 7).

Assuming that defendant-appellant should not now be barred from challenging the capacity of Dr. Fidel Alonso

Caíñas as an expert, the files of this Court, of which we may take judicial notice, disclose that at the time of the trial in the District Court of Ponce, Dr. Fidel Alonso Caíñas was validly practicing the medical profession in this island by virtue of a temporary certificate, this Court having acknowledged his right to a permanent license for the practice of medicine. *Alonso* v. *Board of Medical Examiners*, 74 P.R.R. 148 (Pérez Pimentel) (1952).

As to the fifth error, concerning the waiver of trial by jury, the evidence shows that said waiver was made through defendant's counsel, and ratified by defendant personally. Waiver through counsel, in representation of his client, is sufficient. *People* v. *Figueroa, ante*, p. 175, (1954), (Snyder) ; *People* v. *Tosado, ante*, p. 409, (1954), (Belaval).

As to the sixth assignment with respect to the inadequate aid of counsel, the error is altogether frivolous.

The judgment appealed from will be affirmed.